

FILED
9/20/2017
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RECEIVED

AUG 18 2017  LCW

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

Robert Schindler )
)
_____ )
)
_____ )   CIVIL ACTION
(Name of the plaintiff or plaintiffs) )
)
v. )   NO. 17-cv-05805
Marriott International )   Judge: Amy J. St. Eve
)   Magistrate Judge: Jeffrey Cole
_____ )
)
_____ )
(Name of the defendant or defendants) )

## COMPLAINT OF EMPLOYMENT DISCRIMINATION

1. This is an action for employment discrimination.

2. The plaintiff is Robert Schindler of the county of Cook in the state of Illinois.

3. The defendant is Marriott International, whose street address is 10400 Fernwood Drive,
(city) Bethesda (county) (state) Maryland (ZIP) 20817

(Defendant's telephone number) (301) - 380-3000

4. The plaintiff sought employment or was employed by the defendant at (street address) Marriott Renaissance Schaumburg Convention Center Hotel (city) Schaumburg
(county) Cook (state) Illinois (ZIP code) 60173

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

5. The plaintiff [*check one box*]

(a) ☐ was denied employment by the defendant.

(b) ☐ was hired and is still employed by the defendant.

(c) ☑ was employed but is no longer employed by the defendant.

6. The defendant discriminated against the plaintiff on or about, or beginning on or about, (month) September (day)_____, (year) 2012 .

7.1 *(Choose paragraph 7.1 or 7.2, do not complete both.)*

    (a) The defendant is not a federal governmental agency, and the plaintiff [*check one box*] ☐ *has not* / ☑ *has* filed a charge or charges against the defendant asserting the acts of discrimination indicated in this complaint with any of the following government agencies:

    (i) ☑ the United States Equal Employment Opportunity Commission, on or about (month) September (day) 22 (year) 2016 .

    (ii) ☐ the Illinois Department of Human Rights, on or about (month)_____ (day)_____ (year)_____.

  (b) If charges *were* filed with an agency indicated above, a copy of the charge is attached. ☑ YES. ☐ NO, **but plaintiff will file a copy of the charge within 14 days**.

It is the policy of both the Equal Employment Opportunity Commission and the Illinois Department of Human Rights to cross-file with the other agency all charges received. The plaintiff has no reason to believe that this policy was not followed in this case.

7.2 The defendant is a federal governmental agency, and

    (a) the plaintiff previously filed a Complaint of Employment Discrimination with the defendant asserting the acts of discrimination indicated in this court complaint.

2

☐ Yes (month)_____ (day)_____ (year) _____

☐ No, did not file Complaint of Employment Discrimination

(b)    The plaintiff received a Final Agency Decision on (month)_____

(day) _____ (year) _____.

(c)    Attached is a copy of the

    (i) Complaint of Employment Discrimination,

      ☐ YES    ☐ NO, but a copy will be filed within 14 days.

    (ii) Final Agency Decision

      ☐ YES    ☐ NO, but a copy will be filed within 14 days.

8.    *(Complete paragraph 8 only if defendant is not a federal governmental agency.)*

    (a) ☐ the United States Equal Employment Opportunity Commission has not issued

    a *Notice of Right to Sue.*

    (b) ☑ the United States Equal Employment Opportunity Commission has issued a

    *Notice of Right to Sue,* which was received by the plaintiff on

    (month)_____ (day)_____ (year)_____ a copy of which

    *Notice* is attached to this complaint.

9.    The defendant discriminated against the plaintiff because of the plaintiff's [*check only those that apply*]:

    (a) ☐ Age (Age Discrimination Employment Act).

    (b) ☐ Color (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

3

Case: 1:17-cv-05805 Document #: 12 Filed: 09/20/17 Page 4 of 22 PageID #:78

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

(c) ☑ Disability (Americans with Disabilities Act or Rehabilitation Act)

(d) ☐ National Origin (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(e) ☐ Race (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(f) ☐ Religion (Title VII of the Civil Rights Act of 1964)

(g) ☐ Sex (Title VII of the Civil Rights Act of 1964)

10. If the defendant is a state, county, municipal (city, town or village) or other local governmental agency, plaintiff further alleges discrimination on the basis of race, color, or national origin (42 U.S.C. § 1983).

11. Jurisdiction over the statutory violation alleged is conferred as follows: for Title VII claims by 28 U.S.C.§1331, 28 U.S.C.§1343(a)(3), and 42 U.S.C.§2000e-5(f)(3); for 42 U.S.C.§1981 and §1983 by 42 U.S.C.§1988; for the A.D.E.A. by 42 U.S.C.§12117; for the Rehabilitation Act, 29 U.S.C. § 791.

12. The defendant [*check only those that apply*]

(a) ☑ failed to hire the plaintiff.

(b) ☑ terminated the plaintiff's employment.

(c) ☐ failed to promote the plaintiff.

(d) ☐ failed to reasonably accommodate the plaintiff's religion.

(e) ☑ failed to reasonably accommodate the plaintiff's disabilities.

(f) ☐ failed to stop harassment;

(g) ☑ retaliated against the plaintiff because the plaintiff did something to assert rights protected by the laws identified in paragraphs 9 and 10 above;

(h) ☑ other (specify):_____

_____

4

12. The defendant: Other (Specify):

Plaintiff asserts that he has been **WRONGFULLY BLACKLISTED** by Marriott International.

As attached documentation from his www.marriott.com online employment portal within Marriott's Corporate website shows he has applied for a historical 1,700 jobs in the last five years in an effort to seek re-employment for a majority of jobs for which he is overwhelmingly qualified to perform. He has also sent as many as 250 resumes and cover letters to many hotel chains (including Marriott) across Chicagoland over the last several years primarily in the summer months in a continuing effort to seek hospitality employment. He holds not only a Hotel Management Certificate, but various other hospitality, management, and marketing credentials to perform a wide array of tasks from ranging front desk work to housekeeping. Plaintiff asserts that he is concerned that his online employment portal with Marriott International may be tampered with in an effort to hinder his pursuits of employment with the world's largest hotel chain.

Plaintiff asserts that he has been the victim of **EDUCATIONAL DISCRIMINATION**– a failure of employer Marriott International to consider him for various employment roles because its managers feel he shouldn't pursue his U.S. Constitutional rights to life, liberty, and happiness in various hospitality roles due to his educational attainments otherwise they may not hire him.

13. The facts supporting the plaintiff's claim of discrimination are as follows:

_Please See Attached_

_Plaintiff assects "Continuous harm dectrine"_

14. [**AGE DISCRIMINATION ONLY**] Defendant knowingly, intentionally, and willfully discriminated against the plaintiff.

15. The plaintiff demands that the case be tried by a jury. ☑ YES   ☐ NO

16. THEREFORE, the plaintiff asks that the court grant the following relief to the plaintiff [**check only those that apply**]

(a) ☐   Direct the defendant to hire the plaintiff.

(b) ☑   Direct the defendant to re-employ the plaintiff.

(c) ☐   Direct the defendant to promote the plaintiff.

(d) ☐   Direct the defendant to reasonably accommodate the plaintiff's religion.

(e) ☑   Direct the defendant to reasonably accommodate the plaintiff's disabilities.

(f) ☐   Direct the defendant to (specify): _____

_____

5

13. The facts supporting the plaintiff's claim of discrimination are as follows:

In the Fall of 2012, Plaintiff Robert Schindler, applied for a barback/bar attendant position with Marriott International's Renaissance hotel brand: Renaissance Schaumburg Convention Center Hotel located at 1331 Thoreau Drive Schaumburg, Illinois 60173 United States of America (847) 303-4100, through the companies online application portal at www.marriott.com. The position Mr. Robert Schindler applied was not dual listed on the website and only advertised as that of a barback role.

Plaintiff was interviewed and informed by management that he appeared to be an excellent fit for the job.

The hotel offered Full Time employment of 40 hrs./wk. for Mr. Robert Schindler to perform as a barback/bar attendant in the hotel's Gather Lounge.

Mr. Schindler was schedule for orientation on arguably the busiest weekend of the hotels history when the PGA Medinah Golf Tournament was filling up hotels across the region.

Mr. Schindler was oriented for a busboy/dining room attendant position for which he had not applied in a busy restaurant environment at the hotel's Sam & Harry's Steakhouse (Not the Gather Lounge).

Mr. Schindler expressed some reasonable concerns about his visual impairment after his first shift being oriented to a job he wasn't hired to perform.

Instead of properly orienting him to the job he was hired to perform and draw judgments about his visual impairment and abilities to perform in that role, Marriott International by an through its management, scheduled a couple sessions for a few hours to view Mr. Schindler's ability to function in the Sam & Harry's Steakhouse as a busboy/dining room attendant.

Mr. Schindler never had any accidents, pattern of accidents, or displayed any evidence suggestive that he couldn't do either job as a barback/bar attendant or a busboy/dining room attendant.

Marriott International terminated Mr. Schindler in January 2013 having never properly oriented him to the job for which he was hired and without any justification to do so or objective non-manipulatable form of evidence to back up its actions (e.g. as Marriott staff are not experts in providing reasonable accommodations to the disabled population and thus were only drawing subjective perceptions not factual ones based on a formal occupational evaluation by a licensed professional who evaluates disabled people in the workplace to recommend reasonable accommodations).

Furthermore, Mr. Schindler indicated that he would consider alternative employment roles within the hotel in areas that were open at the time such as housekeeping, but he was told by one of the hotel's managers that you might miss a hair and we might have to comp a room or something to that notion. Likewise, he recommended for Marriott International to collaborate with Marriott Corporate to resolve the situation and seek alternative methods to evaluate his abilities or transfer him to an alternative position within that property or a nearby in Schaumburg, Illinois or Arlington Heights, Illinois

Plaintiff has applied to over 1,700 jobs just on the Marriott Corporate website in a historic effort to seek re-employment. Likewise, he has sent resumes and cover letters to Marriott properties across Chicagoland (including those not on the corporate website) in an effort to seek employment with no avail as if he has been blacklisted by Marriott International. Employment management companies like www.monster.com acknowledge that when people apply with an employer for a substantial number of jobs and fail to obtain employment for which they are clearly qualified this pattern helps to support a complaint of – inhumane blacklisting, which is contrary to public policy.

1

Some Marriott properties have conducted job interviews with plaintiff, but any employer could conduct job interviews to try to cover its efforts not to employ someone. Additionally, Several Marriott properties including: Courtyard by Marriott-Arlington Heights-South, Courtyard by Marriott Des Plaines, Courtyard by Marriott Lincolnshire, and the Residence Inn Downtown Chicago have either engaged in a phone interview or in-person interview with plaintiff for roles such as front desk representative or housekeeping aide only to ask if he can drive the hotel's shuttle van (e.g. do you have a valid drivers license?) as an alleged part of the job when no such advertisement for driving skills were advertised on the hotel's employment website. This too raises suspicions about disability discrimination against plaintiff.

Plaintiff has filed a prior U.S. Equal Employment Opportunity Commission Complaint (EEOC # 440-2013-01356) and a prior case in United States District Court for the Northern District of Illinois/Eastern Division (U.S.D.C. # 1:14-cv-04392) alleging disability and civil rights employment discrimination. The EEOC issued a "Right to Sue" letter and the District Court later dismissed the case after Plaintiff was unable to effectively represent himself amidst having to deal with multiple civil rights litigious matters. An attorney from the Law Offices of Marcus and Boxerman, Mr. Thomas Vogelhuber was appointed to help resolve the case with an indigent plaintiff, but his proposed resolution didn't even minimally cover the backpay that would have been earned fair and square from simple mathematical calculations. While Plaintiff respects that Judge Rebecca Pallmeyer asserted that a Settlement is a compromise, he asserts that he was not provided fair assistance of counsel as this attorney failed to propose a resolution that would recover minimally lost backpay let alone other reasonable damages that could be sought. Note: plaintiff has done some mathematical calculations in this current civil suit and these are only a fraction of the continued harm endured. Plaintiff will file additional complaints at a local, state, federal, or international level to expose the wrongdoing he has endured. No one person owns Marriott International and since they must comply with local, state, federal, and international laws, treaties, and guidelines one can argue the mistreatment I have endured is one of societal interest, not only because I qualify to work in a hospitality environment, but also because I could have paid taxes for five years  as well as to the Social Security Administration.

Plaintiff is aware that the court may not appoint the assistance of counsel given what transpired in the prior portion of his situation involving Marriott International, but he exhibits logic to hold that point of view, and respectfully seeks the opportunity to obtain help to finalize this entire matter with Marriott in the interest of both parties and the court and other relevant agencies in society. Plaintiff is open to options to resolve this case early and to finalize the need for future United States Equal Employment Opportunity Commission, State of Illinois Department of Human Rights, United States District Court filings if such a resolution is humane and fair and discussed with plaintiff. Keep in mind this case has spanned five years and it is complexly intertwined with other employment civil rights cases and a childish misdemeanor unconstitutional criminal case for which plaintiff is reporting domestically and internationally mistreatments he has endured along with all parties involved and their potential motives to mistreat or abuse plaintiff.


PLAINTIFF ASSERTS HE WOULD LIKE TO HAVE REASONABLE ADA ACCOMODATIONS INCLUDING THE ABILITY TO APPEAR VIA THE PHONE WHEN PERMISABLE OR LATER IN THE DAY DUE TO COMMUTING TIME FROM SCHAUMBURG, ILLINOIS ON PUBLIC TRANSPORTATION.

PLAINTIFF HAS WITNESSED SUSPICOUS ISSUES WITH HIS MAIL IN PAST RECENT CIVIL RIGHTS CASES FILED WITH THE UNITED STATES DISTRICT COURT  IN WHICH SOME MAIL NEVER REACHED HIM AND ONE PERSONAL PACKAGE NEVER ARRRIVED HIS PUBLIC APARTMENT COMPLEX. PLAINTIFF DOCUMENTS THIS IN ADVANCE OF THIS CASE IN THE EVENT ANY ISSUE ARISES . MANY ENTITIES HAVE MOTIVES TO PREVENT PLAINTIFF FROM RECEIVEING IMPORTANT MATERIALS OR TO HINDER HIS RESPONSE TIME.

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

16. The defendant: Other (Specify):

Provide plaintiff with lost backpay for the last five years since late September 2012 to such time that this case is finalized to compensate him for wages he would have earned had he not been wrongfully terminated.

At $12.36 per/hr. at a Full Time of 40 hrs./wk. at 5 years(+)/~~130~~ 260 wks.(+) = $128,554.00

This doesn't factor lost opportunities for growth professionally or increased wage increments or other benefits. Mr. Schindler could have been an independent, consistently employed, tax paying citizen for the last five years if not for Marriott Internationals wrongful actions, by an through its poor, negligent, and punitive management.

(g) [✓] If available, grant the plaintiff appropriate injunctive relief, lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees.

(h) [✓] Grant such other relief as the Court may find appropriate.

*Plaintiff seeks 2 million Dollars Collective Damages - Includes interest and tips*

(Plaintiff's signature)

_Robert Schindler_

(Plaintiff's name)

_Robert Schindler_

(Plaintiff's street address)

_131 Oak Lawn Court, #307_

_____

(City) _Schaumburg_  (State) _Illinois_ (ZIP) _60173_

(Plaintiff's telephone number) _(312) - 375-7053_

Date: _August 7, 2017_

6

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | 440-2016-06169 |

| Illinois Department Of Human Rights | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Mr. Robert J. Schindler | (312) 375-7053 | ▓▓▓▓▓ |

| Street Address | City, State and ZIP Code |
|---|---|
| West Palm Drive #21, Mount Prospect, IL 60056 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| MARRIOTT INTERNATIONAL | 500 or More | (301) 380-3000 |

| Street Address | City, State and ZIP Code |
|---|---|
| 10400 Fernwood Drive, Bethesda, MD 20817 | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN  ☒ RETALIATION  ☐ AGE  ☒ DISABILITY  ☐ GENETIC INFORMATION  ☐ OTHER (Specify) | Earliest            Latest            08-26-2016  ☒ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was formerly employed by Respondent in or around September 2012. I filed a previous EEOC Charge. Respondent is aware of my disability. Since filing my EEOC charge and continuing as recent as August 26, 2016, I have applied form employment at numerous Respondent facilities, and been denied employment.

I believe I have been discriminated against based on my disability, and in retaliation for engaging in protected activity, in violation of The Americans with Disabilities Act of 1990, as amended.

SEP 22 2016

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.  SIGNATURE OF COMPLAINANT |
| Sep 22, 2016 _____  Date | Robert Schindler _____  Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Robert J. Schindler<br>1720 West Palm Drive<br>Unit 21<br>Mount Prospect, IL 60056 | From: | Chicago District Office<br>500 West Madison St<br>Suite 2000<br>Chicago, IL 60661 |
|---|---|---|---|

|  | *On behalf of person(s) aggrieved whose identity is*<br>*CONFIDENTIAL (29 CFR §1601.7(a))* |  |
|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 440-2016-06169 | Carol Milazzo,<br>Investigator | (312) 869-8133 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*Julianne Bowman*                    5-8-17

**Julianne Bowman,**
**District Director**

*(Date Mailed)*

Enclosures(s)

cc:     **MARRIOTT INTERNATIONAL**
        c/o Aaron R Gelb
        **Vedder Price**
        22 North LaSalle Street, Chicago, IL 60601

# My Submissions (1753 job submissions found)

ACCESS MY PROFILE

VIEW JOBS MATCHING MY PROFILE

This page displays all relevant details related to your draft and completed submissions. For each submission, you can: Select the job title to view the job summary.

Select "Finish Draft Submission" to open the draft application.

Select "Withdraw" to remove your job application from consideration.

Submissions per page:   5

# Draft Submissions

## Human Resources Generalist
Full-time
USA-IL-Chicago-Chicago Marriott Downtown Magnificent Mile
Job Number: 15000YOZ
Job Status: Inactive (No Longer Accepting Job Submissions)

**VIEW SUBMISSION**     VIEW EMAIL MESSAGES

## Stewards Supervisor
Full-time
USA-IL-Chicago-Renaissance Chicago Downtown Hotel
Job Number: 17000QDM
Job Status: Inactive (No Longer Accepting Job Submissions)

**VIEW SUBMISSION**     VIEW EMAIL MESSAGES



✕

STAY IN TOUCH
Subscribe to our monthly e-newsletter.
(http://stayintouch.marriott.com  )

## Gourmet Coffee Attendant to Work Flexible Shifts

Full-time

USA-IL-Chicago-Chicago Marriott Downtown Magnificent Mile

Job Number: 17000LDZ

Job Status: Inactive (No Longer Accepting Job Submissions)

**VIEW SUBMISSION**      VIEW EMAIL MESSAGES

## Maintenance Helper

Full-time

USA-IL-Chicago-Renaissance Chicago Downtown Hotel

Job Number: 17000KTU

Job Status: Inactive (No Longer Accepting Job Submissions)

**VIEW SUBMISSION**

## Administrative Assistant Sales

Full-time

USA-IL-Rosemont-Central Northwest Sales Office

Job Number: 17000BG8

Job Status: Inactive (No Longer Accepting Job Submissions)

**VIEW SUBMISSION**      VIEW EMAIL MESSAGES

Previous   1   2   3   4   5   Next

WITHDRAW ALL SUBMISSIONS

✕   STAY IN TOUCH

Subscribe to our monthly e-newsletter.

(http://stayintouch.marriott.com   )

| CHARGE OF DISCRIMINATION | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974: See Privacy act statement before completing this form.   #15W0202.08 | ☒ IDHR   ☐ EEOC | 2015CF2061 |

### Illinois Department of Human Rights and EEOC

| NAME OF COMPLAINANT (indicate Mr. Ms. Mrs.)  Mr. Robert Schindler | TELEPHONE NUMBER (Include area code)  (312) 375-7053 | |
|---|---|---|
| STREET ADDRESS           CITY, STATE AND ZIP CODE  P.O. Box 59428          Schaumburg, IL 60159 | | DATE OF BIRTH  /  /  M   D   YEAR |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (IF MORE THAN ONE LIST BELOW)

| NAME OF RESPONDENT  Marriott International Renaissance Hotel and Convention Center | NUMBER OF EMPLOYEES, MEMBERS  15+ | TELEPHONE NUMBER (Include area code)  (847) 303-4100 |
|---|---|---|
| STREET ADDRESS           CITY, STATE AND ZIP CODE  1551 North Thoreau Drive      Schaumburg, IL 60173 | | COUNTY  Cook (031) |

| CAUSE OF DISCRIMINATION BASED ON:  **Disability**      **Retaliation** | DATE OF DISCRIMINATION  EARLIEST (ADEA/EPA) LATEST (ALL)  01/22/15  ☐ CONTINUING ACTION |
|---|---|

THE PARTICULARS OF THE CHARGE ARE AS FOLLOWS:

I.  A.  **ISSUE/BASIS**

   **FAILURE TO HIRE, ON OR ABOUT JANUARY 22, 2015, BECAUSE OF MY DISABILITY, VISION IMPAIRMENT.**

   B.  **PRIMA FACIE ALLEGATIONS**

   1.  I am an individual with a disability as defined under Section 1-103(I) of the Illinois Human Rights Act.

   2.  Respondent has knowledge of my condition.

Page 1 of 2

| I also want this charge filed with the EEOC. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | SUBSCRIBED AND SWORN TO BEFORE ME  THIS  9  DAY OF  February , 2015.  _Jacquelyn Turner Hamb_  NOTARY SIGNATURE |
|---|---|
| OFFICIAL SEAL  JACQUELYN TURNER HAMB  NOTARY PUBLIC - STATE OF ILLINOIS  MY COMMISSION EXPIRES:11/12/17  NOTARY STAMP | x _Robert Schindler_ 2-9-15  SIGNATURE OF COMPLAINANT      DATE  I declare under penalty that the foregoing is true and correct I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |

**Charge Number:** 201?F2061
**Complainant:** Robert Schindler
**Page 2 of 2**

3. On or about January 22, 2015, Respondent advertised an online vacancy for a Banquet Aide position. I was qualified for, and I applied for Respondent's position.

4. On or about January 22, 2015, I was notified by the Respondent's unnamed, unknown Human Resources Representative, that I would not be selected for the Banquet Aide's position. No specific reason was provided as to why I was not being selected.

5. My disability does not affect my ability to perform the essential duties of the job, with reasonable accommodations.

II.   A.   ISSUE/BASIS

FAILURE TO HIRE, ON OR ABOUT JANUARY 22, 2015, IN RETALIATION FOR FILING A PREVIOUS CHARGE OF DISCRIMINATION AGAINST THE RESPONDENT

B.   PRIMA FACIE ALLEGATIONS

1. On or during 2013, I engaged in a previously protected activity when I filed discrimination charge number (#440-2013-03156) against the Respondent with the U.S. Equal Employment Opportunity Commission (EEOC).

2. On or about January 22, 2015, Respondent advertised an online vacancy for a Banquet Aide's position. I was qualified for, and I applied for Respondent's position.

3. On or about January 22, 2015, I was notified by the Respondent's unnamed, unknown Human Resources Representative, that I would not be selected for the Banquet Aide position. No specific reason was provided as to why I was not being selected.

4. Respondent's adverse action followed the filing of my charge within such a period of time as to raise an inference of retaliatory motivation.

ACF/RCG/amm

29 December 2014

FOR SETTLEMENT PURPOSES ONLY BY E-MAIL agelb@vedderprice.com
Aaron R. Gelb, Esq. Vedder Price 222 North LaSalle Street Chicago, Illinois 60601

Re:  Schindler v. Marriott Renaissance Schaumburg Convention Center Hotel/ Case
No. 14 CV 04392 (U.S. District Court for the Northern District of Illinois)

Dear Mr. Gelb:

This letter is for settlement purposes only and may not be used for any other purpose.
As you know, I have been appointed (through the Chicago Lawyers' Committee for Civil Rights
Under Law, Inc.) to appear on behalf of Robert Schindler for the limited purpose as his
settlement assistance program counsel. This matter is scheduled for a settlement conference
with the Honorable Michael T. Mason on 12 January 2015 at 1:30 p.m.
Pursuant to Judge Mason's settlement conference procedures and to help facilitate settlement
conference discussions, I am providing this pre-conference letter outlining Mr. Schindler's
position and settlement offer.

I.    Background

A.    Mr. Schindler Applied for a Barback Job Posting and Hired By Marriott
In late 2012, Mr. Schindler submitted a job application for a barback position with Defendant
Marriott Renaissance Schaumburg Convention Center Hotel at _____("Restaurant"). In
September 2012, Mr. Schindler had two interviews with Marriott in response to his job
application for a barback position.

During his interviews, Marriott discussed the prospective job duties for the Restaurant's open
position. Marriott never discussed that pouring liquids or serving food was required, or even a
possibility. Mr. Schindler conveyed in his interviews that he could perform the prospective job
duties without any issues. Marriott said that Mr. Schindler would be a "perfect" fit for the
Restaurant. After successful interviews, Marriott hired Mr. Schindler to work at the
Restaurant.Aaron R. Gelb, Esq. 29 December 2014 Page 2

In late September 2012, Mr. Schindler began his employment with two days of orientation on
Friday and Saturday. Mr. Schindler's orientation consisted of shadowing an employee at the
Restaurant for training on his job duties. While there were some language barrier issues during
training, Mr. Schindler was able to perform the job tasks for which Marriott trained him.
Marriott did not initially train him to perform the position for which he applied—barback.
Instead, Marriott cross-trained Mr. Schindler to work at the Restaurant as a dining room
attendant (busser). Mr. Schindler did not receive training for the barback position.

1

B.    Mr. Schindler Requested Reasonable Accommodation for Legal Blindness

After Mr. Schindler's orientation and training finished on Saturday, that same night, Marriott initiated Mr. Schindler by having him work during the PGA tournament at the Medinah Country Club, which is historically busy for the Restaurant. As a busser, Mr. Schindler performed all of the job duties (except two) without any problems. Specifically, Mr. Schindler had issues with pouring liquids and serving food. These tasks were neither listed on the job application nor mentioned during his interviews.

Mr. Schindler suffers from Nystagmus, which causes various visual symptoms, such as sensitivity to light, dizziness, difficulty seeing in darkness, and other vision problems. Mr. Schindler is legally blind, and as a result of his visual disability, he has trouble with depth perception and with locating objects in extremely dark and homogenous settings. Based on his visual disability, Mr. Schindler had issues with pouring water while the glass remained on the table and with placing plates in front of diners. The extremely dim lighting in the Restaurant with lack of contrasting colors hindered Mr. Schindler's ability to perform these tasks.

C.    Marriott Failed to Identify Reasonable Accommodations

Mr. Schindler notified his managers of his concerns regarding pouring water and serving plates to guests. He requested that Marriott work him to accommodate his visual disability. Mr. Schindler informed Marriott that he could not return to work until Marriott identified ways to accommodate his visual disability.

The following Monday, Mr. Schindler contacted Marriott's human resources department to address his concerns. In response to Mr. Schindler's request for accommodation, one of Mr. Schindler's managers at the Restaurant developed a list of job duties required for a barback and a dining room attendant[1]. Mr. Schindler met with his manager to review these job duties and to address his ability to perform these tasks. Apart from pouring water and serving plates (which were never identified in the job posting or discussed in the interview), Mr. Schindler performed all of the job tasks without any problem.

D.    Marriot Terminated Mr. Schindler

After summarily concluding that Mr. Schindler could not pour water or serve plates, Marriott unilaterally determined that its only option was to terminate Mr. Schindler against his will. Prior to reaching this conclusion, Marriott failed to adequately engage in an interactive process with Mr. Schindler to identify possible reasonable accommodations that would enable him to pour water or to

[1] See job descriptions attached as Ex. A.

Aaron R. Gelb, Esq. 29 December 2014 Page 3

serve food. What is more, Marriott did not consider Mr. Schindler for other available positions that would have fit Mr. Schindler's skills and abilities. Mr. Schindler has numerous degrees and certificates relating to hospitality and hotel and management. Had Marriott worked with Mr. Schindler to identify other reasonable job opportunities within the hotel, Mr. Schindler believes that he could have been a valuable asset.

Nevertheless, without adequately determining whether Mr. Schindler could perform his job duties with a reasonable accommodation, Marriott terminated Mr. Schindler in January 2013. Based on his belief that Marriott discriminated against him based on his legally protected visual disability, Mr. Schindler filed a discrimination charge with the U.S. Equal Employment Opportunity Commission alleging a violation of the Americans With Disabilities Act. The EEOC dismissed the charge because it could not conclude whether there was a violation of the Act and issued Mr. Schindler a Notice-of-Right-to-Sue letter. Subsequently, Mr. Schindler filed this present discrimination complaint in the U.S. District Court, Northern District of Illinois. As outlined below, Mr. Schindler believes that he has causes of action for disability discrimination under the Americans With Disabilities Act.

II.     Mr. Schindler Believes that Marriott Discriminated Against Him Based on Visual Disability

Mr. Schindler believes that Marriott discriminated against him based on his visual disability because (A) Marriott terminated based on his visual disability, despite the fact that he could perform of all of the job's essential functions; (B) or, alternatively, Marriott failed to provide him with a reasonable accommodation to enable him to perform his job's essential functions. Under Title I of the Americans with Disabilities Act of 1990, an employer is required to provide reasonable accommodation to qualified individuals with disabilities who are employees or applicants for employment, unless to do so would cause undue hardship. "Reasonable accommodations" include "modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position."

A.     Mr. Schindler Performed All of His Essential Job Duties Without Any Issues

Pouring water and serving food were not "essential functions" of Mr. Schindler's job at the Restaurant. As such, Marriott could have simply eliminated these job duties from his position to accommodate his employment, but Marriot did not.

In September 2012, Mr. Schindler applied for the open position of barback and Marriott hired Mr. Schindler to work at the Restaurant as barback. The posting for the job application did not mention these two duties. And, during his interviews, the managers never mentioned pouring water or serving food as "essential functions." Instead, the issue did not come up until Mr. Schindler started his employment and received cross-training as busser.

While the barback and busser job descriptions list pouring beverages and serving plates as job requirements, the manager prepared these descriptions only after Mr. Schindler requested a reasonable

Aaron R. Gelb, Esq. 29 December 2014 Page 4
accommodation. These lists are not dispositive of whether pouring water and serving food were "essential functions." Instead, these are factual issues to be addressed later in litigation.

B.     Marriott Failed Make a Good Faith Effort to Find a Reasonable Accommodation

Alternatively, assuming pouring water and serving food were "essential functions," Marriott failed to engage in a good faith effort to find a reasonable accommodation to enable Mr. Schindler to perform his job duties.

3

In order for a disabled individual to show that an employer failed to provide an accommodation, an individual must show: (1) one is a qualified individual with a disability; (2) the employer was aware of her disability; and (3) the employer failed to reasonably accommodate the disability.[2]

A "qualified" individual is one who can perform the essential functions, with or without reasonable accommodation. Every request for a reasonable accommodation must be handled on an individualized basis that takes into consideration the job duties, the individual's disability, and work environment.

Marriott, however, failed to engage in an interactive process with Mr. Schindler to identify a possible reasonable accommodation to allow him to pour water and to serve plates. Marriott displayed a lack of communication with Mr. Schindler to exchange ideas and to identify effective accommodations. Instead, Marriott came up with a list of "essential functions" after Mr. Schindler submitted his reasonable accommodation request. Then, Marriott without fully engaging with Mr. Schindler, unilaterally determined that the Restaurant could not reasonable accommodate his visual disability.

While Marriott is not required to provide an accommodation that would impose an undue hardship on the employer's business[3], Mr. Schindler believes that a reasonable accommodation could have been provided that would not have unduly burdened Marriott. Marriott could have explored options to assist Mr. Schindler's visual problems with pouring water and serving plates. Marriott could have increased lighting, opened windows, allowed Mr. Schindler to work with a flashlight, or changed his hours to a time of day when he could work with more light. In addition,

[PLEASE IDENTIFY EVERYTHING THAT MARRIOTT DID TO FIND A REASONABLE ACCOMODATION]

What is more, Mr. Schindler was neither unwilling nor inflexible to consider other open positions or other locations with the hotel. Unfortunately, Marriott could did not and could not know this because it did not fully engage in an interactive process to identity a reasonable accommodation.

Mr. Schindler believes that if Marriott engaged in a good-faith interactive process to identify a reasonable accommodation then a workable accommodation could have been provided to allow Mr. Schindler to pour water and to serve food. This, however, did not happen.

III.     Mr. Schindler's Lost Wages and Job Opportunities and Emotional Suffering

[2] Hoffman v. Caterpillar, Inc., 256 F.3d 568 (7th Cir. 2001). [3] Olmstead v. L. C. by Zimring, 527 U.S. 581 (1999). Marriott was not required to provide an accommodation that (1) significantly disrupted the business; (2) involved a significant expense; or (3) changed a basic nature of its business.

Aaron R. Gelb, Esq. 29 December 2014 Page 5

Based on Marriott's treatment and termination, Mr. Schindler has suffered marked monetary and non-monetary damages from his loss of employment and emotional pain and suffering. After his termination, Mr. Schindler spent numerous hours and considerable effort to find another similar job. Mr. Schindler sent hundreds of resume to prospective employers and attended job interviews.

4

Through no lack of trying, Mr. Schindler unfortunately remained unemployed from his termination in January 2013 to July 2014, when he found a part-time job as a store clerk with HomeGoods. Nevertheless, Mr. Schindler has been making a lower hourly salary ($8.50) and has been working fewer hours (16 hours per week) than if he were still employed with Marriott. During the nearly 18-month period of unemployment, Mr. Schindler suffered a considerable amount of lost wages (40 hours per week at $12.36 per hour) and loss of job opportunities and growth.

In addition, Mr. Schindler has suffered severe emotional and physical distress from Marriott's conduct toward him. Sadly, Mr. Schindler has been discriminated against before due to his visual disability. In several of Mr. Schindler's prior jobs, his employers treated him unfairly because of his disability and failed to accommodate his condition. For this reason, Mr. Schindler has been particularly wary of any employer. Mr. Schindler is particularly sensitive to his disability and how will be treated in the future.

Mr. Schindler's termination by Marriott, however, only exasperated his fears and sensitivity of his disability. Marriott's termination has left Mr. Schindler with loss of self-esteem, embarrassment, and distrust. Mr. Schindler has experienced frustration in connection with his studying for hospitality and hotel management certificates and with obtaining employment, only to be denied opportunities because of his disability. The deleterious effects of being discriminated against have significantly hurt Mr. Schindler's career aspirations, strained his personal and family life, and led to a loss of respect from his colleagues.

IV.    Mr. Schindler's Settlement Offer

Based on Marriott's conduct, Mr. Schindler has suffered loss of wages and emotional damages. In the spirit of settlement, however, Mr. Schindler proposes the following offer to resolve this matter without further litigation:

> Payment of $50,000 representing Mr. Schindler's compensatory and punitive damages;
> Full release of any claims that Mr. Schindler may have against Marriott;
> Statement from Mr. Schindler that Marriott did not discriminate against him; and
> Confidentiality agreement, incorporating provision that Mr. Schindler will agree not contact any media or other third-party regarding this lawsuit or his employment with Marriott.

Mr. Schindler believes this represents a fair offer and compromise from his initial claim of $1.5 million in compensatory and punitive damages. The monetary damages seek to compensate Mr. Schindler for lost wages and job opportunities and emotional pain and suffering.

Aaron R. Gelb, Esq. 29 December 2014 Page 6

Mr. Schindler believes he has cognizable causes of action sufficient to defeat a motion to dismiss. There are questionable issues of fact: first, whether pouring water and serving food were "essential functions"; and second, whether Marriott could have provided a reasonable accommodation. Mr. Schindler is prepared to obtain an attorney and to litigate this matter to obtain the relief he seeks. Moreover, if this litigation cannot be resolved, Mr. Schindler will contact various media outlets to report Marriott's conduct toward him during his employment at Marriott.

Mr. Schindler looks forward to receiving Marriott's response and to discussing this matter further at the January 12th settlement conference.

Very truly yours,
Thomas C. Vogelhuber

cc:     Honorable Michael T. Mason (by e-mail Proposed_Order_Mason@ilnd.uscourts.gov )
Mr. Robert Schindler (by e-mail)

*Against the Blind and Visually Impaired*

*SAMPLE CASE from California*

The
Legal Aid Society
Employment Law
Center

**NEWS RELEASE**

FOR IMMEDIATE RELEASE

Contact:  Jinny Kim, 415-864-8848, jkim@las-elc.org, www.las-elc.org
Timothy Elder, 410-415-3493, telder@trelegal.com, www.trelegal.com

LAWSUIT CLAIMS MARRIOTT DISCRIMINATES AGAINST BLIND EMPLOYEES
CLASS ACTION SEEKS EQUAL ACCESS TO PROMOTIONS, COMPUTER SOFTWARE

(SAN DIEGO, CA, **February 6, 2013**) – Today, the Legal Aid Society – Employment Law Center (LAS-ELC) and TRE Legal filed a class action lawsuit in federal court against Marriott, alleging that the hotel giant discriminates against blind and disabled employees by requiring its managers to use inaccessible computer software and rejecting accessible alternatives.

Ali Faraj is a blind Marriott employee who has been excluded from advancement to a management position with Marriott based on the hotel chain's requirement that managers use a Sales Force Automation (SFA) software program by the Oracle Corporation called Siebel CRM (Customer Relation Management).  Despite requests, Marriott has refused to configure or modify its SFA software so that disabled persons such as Mr. Faraj who use screen-reading software can serve as managers.

Mr. Faraj has worked for the Marriot hotel chain since 2005, and is currently an Event Billing Specialist at the San Diego Marriott Marquis.  Like other blind employees of Marriott, Mr. Faraj uses computers by relying on JAWS screen reader software, a program that translates computer text into audible speech or refreshable Braille data.  JAWS enables blind people and others with reading and print disabilities to access documents and digital information on computers and thus become productive and independent workers.

"I have a B.A. in Hospitality Business, and more than ten years of experience in the industry, including my nearly eight successful years with Marriott.  I want to advance," said Mr. Faraj.  "But Marriott managers keep telling me that I cannot be promoted into a position requiring use of Siebel CRM.  That's not fair."

He added that a Marriott HR manager has acknowledged that he is more qualified than other candidates placed by Marriott into management.

The lawsuit alleges that there are nondiscriminatory alternatives to Marriott's current software system, including replacing Siebel CRM with alternative, JAWS-accessible SFA software, updating and upgrading the existing Siebel CRM software to make it JAWS-accessible system-wide, and adding individualized modifications or scripts to the existing Siebel CRM software to make it JAWS-accessible to particular individuals.

"Marriott contends that it would cost more than $1,000,000 to fix the problems," said Timothy Elder, a principle of TRE Legal and an attorney for Mr. Faraj.  "That is just not the case.  One solution would cost less than $50,000 and would open up competitive employment opportunities for many blind and disabled Marriott workers.

Mr. Elder further disputed that the fix would impose an undue hardship on the company. According to reports, Marriott International had revenues of $12.3 billion for 2011, and has assets worth $5.9 billion; Host Marriott has assets totaling $11.3 billion.

In recent months, Marriott has expanded the Seibel CRM software configuration, integrating additional computer programs into the inaccessible platform. This expansion further threatens the employment opportunities of Mr. Faraj and other blind and disabled employees by reaching additional jobs at Marriott.

"The Americans with Disabilities Act prohibits employers from using selection criteria and methods of administration that exclude persons with disabilities," said Jinny Kim, senior staff attorney with LAS-ELC and counsel for Mr. Faraj. "This case seeks to dismantle unnecessary barriers created by an employer's technology."

The class action lawsuit requests a determination from the court that Marriott is in violation of the Americans with Disabilities Act, and a court order requiring Marriott to make the required changes to its software system and related policies on behalf of a class of affected workers. The case also seeks damages and other relief for Mr. Faraj.

Lawyers on the case are interested in speaking with any Marriott employee who uses screen-reading software. They may also be contacted to set up telephone interviews with Mr. Faraj.

### ###

**About the Legal Aid Society-Employment Law Center  |  www.las-elc.org**
Founded in 1916, the Legal Aid Society-Employment Law Center protects the rights and economic self-sufficiency of working poor people and marginalized communities by providing free legal services, education, and advocacy. Using the law as a tool, we help low-wage workers create the best possible future for themselves and their families.

**About the TRE Legal Practice  |  www.trelegal.com**
Founded by attorney Timothy Elder, TRE Legal is a civil rights law firm fighting discrimination against disabled people and specializing in the rights of the blind to access employment, education, government programs, public accommodations, accessible technology and all other aspects of society.